UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UNDERPINNING & FOUNDATION SKANKSA,    Docket No. 07 CV 7348 (WHP)(JCF)
INC.,

                Plaintiff,    **ANSWER**

     -against-

TRAVELERS CASUALTY & SURETY
COMPANY OF AMERICA,

                Defendant.
------------------------------------------------------------------X

     The Defendant, Travelers Casualty & Surety Company of America, by its attorneys McDonough Marcus Cohn Tretter Heller & Kanca, LLP, in answer to the Plaintiff's complaint, alleges as follows:

     1.    The Defendant denies knowledge or information sufficient to form a belief as to allegations set forth in paragraph numbered "1" of the complaint.

     2.    The Defendant admits allegations set forth in paragraph numbered "2" of the complaint.

     3.    The Defendant generally denies allegations set forth in paragraph numbered "3" of the complaint and respectfully refers all questions pertaining to jurisdiction to the Court for an interpretation of the law.

     4.    The Defendant generally denies allegations set forth in paragraph numbered "4" of the complaint and respectfully refers all questions pertaining to venue to the Court for an interpretation of the law.

5. The Defendant admits only that Urban Foundation/Engineering, LLC (hereinafter, "Urban"), entered into an agreement to perform certain work for the construction of a project known as 270 Greenwich Street, located in New York, New York (hereinafter, the "Project"), that the Defendant lacks knowledge or information sufficient to form a belief as to remainder of allegations set forth in paragraph "5" of the complaint, and the construction of the agreement is respectfully referred to the Court for an interpretation thereof.

6. The Defendant admits that only that it issued a payment bond for the Project. In all other respects allegations set forth in paragraph numbered "6" of the complaint are denied in that the terms of the bond speak for themselves, and such terms are respectfully referred to the Court for an interpretation thereof.

7. The Defendant admits only that the Purchase Order Agreements was entered into. In all other respects allegations set forth in paragraph numbered "7" of the complaint are denied in that the terms of the Purchase Order Agreement speak for themselves, and such terms are respectfully referred to the Court for an interpretation thereof.

8. The Defendant generally denies allegations set forth in paragraph numbered "8" of the complaint in that the terms of the Purchase Order Agreement speak for themselves, and such terms are respectfully referred to the Court for an interpretation thereof.

9. The Defendant denies knowledge or information sufficient to form a belief as to the allegations set forth in paragraph numbered "9" of the complaint.

10. The Defendant denies allegations set forth in paragraph numbered "10" of the complaint.

11. The Defendant denies allegations set forth in paragraph numbered "11" of the complaint.

12. The Defendant denies allegations set forth in paragraph numbered "12" of the complaint.

13. The Defendant denies knowledge or information sufficient to form a belief as to allegations set forth in paragraph numbered "13" of the complaint.

14. The Defendant denies allegations set forth in paragraph numbered "14" of the complaint.

15. The Defendant denies allegations set forth in paragraph numbered "15" of the complaint.

16. The Defendant admits so much of paragraph numbered "16" of the complaint that states that Urban paid the Plaintiff the sum of at least $1,961,492.50, and denies all other allegations.

17. The Defendant denies allegations set forth in paragraph numbered "17" of the complaint.

18. The Defendant denies allegations set forth in paragraph numbered "18" of the complaint in that it states a conclusion of law and the terms of General Business Law §756-b speak for themselves, and such terms are respectfully referred to the Court for an interpretation thereof.

19. The Defendant denies allegations set forth in paragraph numbered "19" of the complaint in that the terms of the Bond speak for themselves, and such terms are respectfully referred to the Court for an interpretation thereof.

20. The Defendant denies allegations set forth in paragraph numbered "20" of the complaint in that the terms of the Bond speak for themselves, and such terms are respectfully referred to the Court for an interpretation thereof.

21. The Defendant admits only it received correspondence from the Plaintiff and denies the remainder of allegations set forth in paragraph numbered "21" of the complaint in that the terms of the document speak for themselves, and such terms are respectfully referred to the Court for an interpretation thereof..

22. The Defendant similarly repeats all allegations above.

23. The Defendant denies allegations set forth in paragraph numbered "23" of the complaint.

24. The Defendant similarly repeats all allegations above.

25. The Defendant denies knowledge or information sufficient to form a belief as to allegations set forth in paragraph numbered "25" of the complaint.

26. The Defendant denies knowledge or information sufficient to form a belief as to allegations set forth in paragraph numbered "26" of the complaint.

27. The Defendant denies knowledge or information sufficient to form a belief as to allegations set forth in paragraph numbered "27" of the complaint.

28.     The Defendant denies knowledge or information sufficient to form a belief as to allegations set forth in paragraph numbered "28" of the complaint.

29.     The Defendant denies allegations set forth in paragraph numbered "29" of the complaint.

30.     The Defendant similarly repeats all allegations above.

31.     The Defendant denies allegations set forth in paragraph numbered "31" of the complaint in that it states a conclusion of law and the terms of General Business Law §756-a speak for themselves, and such terms are respectfully referred to the Court for an interpretation thereof.

32.     The Defendant denies knowledge of information sufficient to form a belief as to allegations set forth in paragraph numbered "32" of the complaint and the construction of the agreement is respectfully referred to the Court for an interpretation thereof.

33.     The Defendant admits only that Urban issued some payments to Underpinning and denies knowledge or information sufficient to form a belief as to the remainder of allegations set forth in paragraph numbered "33" of the complaint.

34.     The Defendant denies knowledge or information sufficient to form a belief as to allegations set forth in paragraph numbered "34" of the complaint and respectfully refers any statutory construction to the Court for an interpretation thereof.

35.     The Defendant denies knowledge of information sufficient to form a belief as to allegations set forth in paragraph numbered "35" of the complaint except admits that the Urban paid the Plaintiff the sum of at least, $94,212.

36. The Defendant denies knowledge of information sufficient to form a belief as to allegations set forth in paragraph numbered "36" of the complaint except admits that Urban paid the Plaintiff the sum of at least, $151,924.50.

37. The Defendant denies knowledge or information sufficient to form a belief as to allegations set forth in paragraph numbered "37" of the complaint.

38. The Defendant denies allegations set forth in paragraph numbered "38" of the complaint and refers any statutory or Bond construction to the Court for an interpretation thereof

## GENERAL STATEMENT

39. On or about the 2nd day of December 2005, the Defendant's Attorney-in-Fact and Urban, jointly and severally executed and furnished a common law payment bond (hereinafter, the "Bond"), No. 104584480 to HRH Construction LLC, as Owner, to pay for labor, materials and equipment furnished for use in the performance of Urban's construction contract (hereinafter, the "Contract").

40. The Bond in applicable part provides:

   (a) Paragraph "3": With respect to Claimants, this obligation shall be null and void if the Contractor promptly makes payment, directly or indirectly, for all sums due;

   (b) Paragraph "4": The Surety shall have no obligations to Claimants under this Bond until:

   4.1 Claimants who are employed by or have a direct contract with the Contractor have given notice to the Surety (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and, with substantial accuracy, the amount of the claim.

41. Paragraph "1" of the Bond provides that the terms of the Contract entered into between Urban and HRH Construction, LLC, are incorporated into the Bond.

42. The Contract provisions that were incorporated into the Bond provide:

   (a) Section 6.14   Site Conditions and Access

   (i) By executing the Contract, the Subcontractor represents that it has visited the Site, familiarized itself with the locate conditions under which the Work is to be performed, correlated its observations with the requirements of the Contract Documents and understands that the Work may be done in a congested area and has calculated its price and time schedule accordingly.

   (b) Section 6.16   Coordination with Other Trades

   (b) If the Contractor shall determine that the Subcontractor is failing to coordinate its Work with the work of other Subcontractors as directed, the Contractor may upon written notice to the Subcontractor:

   (i) withhold any payment otherwise due hereunder until such directions are complied with by the Subcontractor;

   (ii) direct others to perform portions of this Contract and charge the cost of such work to the Contract Price.

   (c) Section 7.1   Time for Completion of Work

   (a) It is understood and agreed that time is of the essence in the commencement, prosecution and completion of the Work. The Subcontractor shall and will proceed with the said Work and every part and detail thereof in a prompt and diligent manner and shall and will do the several parts thereof at such times and in such order as Contractor may direct. The Subcontractor shall and will wholly finish the said Work according to the Contract Documents and as required in order to maintain the progress of construction of the Project and in accordance with the time schedules, starting dates and completion dates, if any, set forth in Rider No. 2 hereto, except that the Subcontractor's time for

completion as hereinbefore set forth shall be extended by reason of any delay resulting from causes as provided in Section 7.2(c) herein.

(d)     Section 7.2    <u>Delays, Damages and Extensions of Time</u>

       (a)     The Subcontractor shall provide adequate manpower and equipment and materials to keep up the progress of the job. It is understood that Subcontractor shall perform the Work during normal working hours except as may be provided otherwise in Rider No. 2. However, Subcontractor will work overtime at its own expense when its manpower is inadequate to keep up the progress of the job. All costs of all standby trades will be charged to this Subcontractor when such overtime is required.

       (e)     If the Subcontractor or any of its Sub-Subcontractors or suppliers shall delay the progress of the Work or fail to coordinate its Work with the work of the other Subcontractors and, as a result thereof, the Architect, Contractor or Owner shall incur damages (including liquidated damages, if applicable), the Subcontractor shall be responsible for same and shall indemnify and hold harmless the Architect, Contractor and Owner on account of any such damages.

(e)     Section 9.1    <u>Changes in the Work</u>

       (b)     The Subcontractor shall make no claim for changes in the Work, additional Work or extra Work unless the same shall be done in pursuance of a written order from the Contractor as hereinafter provided and notice of all such claims shall be made to the Contractor in writing within three (3) working days after the event giving rise to such claim, or such shall be considered as abandoned by the Subcontractor.

       (c)     Bills for any changes in the Work, additional Work or extra Work shall be rendered at such time and in such form as directed by the Contractor. For the purpose of verifying such bills, the Subcontractor shall upon request produce any and all data to determine the correctness of the charges.

       (h)     When performing Work on a time and material basis, the

>Subcontractor, on a daily basis, shall furnish to the representative of the Contractor duplicate time sheets, material tickets and slips for other miscellaneous charges, retaining copies of each and securing the signature of the Contractor's representative on all time sheets, material tickets and slips for miscellaneous charges. Signed tickets only represent verification of work performed by the Subcontractor. Signed tickets are subject to all Contract requirements which requirements shall determine which work is extra work to the Contract. All signed documents shall accompany applications for payment.

(f) Section 9.2 <u>Guaranteed Maximum Price</u>

>(c) All requests for Change Orders must be submitted to the Contractor within, and in no event later than thirty (30) days from the date of the written request for a Change Order. The Subcontractor shall not proceed with any Change Order work until the work covered by the Change Order has been approved by the Contractor, for itself and behalf of the Owner.

>(d) Any and all Change Orders must be approved, in writing, by the Contractor, on behalf of itself, and Owner, any Change Orders not so approved will be considered as null and void, and will not be considered for payment, in whole or in part, under any circumstances.

>(e) The Subcontractor will be fully responsible to report each and every Change Order to his Bond surety, and to obtain consent of the surety for performance of same, before proceeding with the Work contemplated by the Change Order. Failure of Subcontractor to obtain said consent of its surety will be considered a material breach of the Subcontractors obligations hereunder.

(g) Section 10.1 <u>Payments</u>

>(g) The Contractor, Architect or Owner may decline to approve a requisition for payment in whole or in part or decline to make a payment or may disapprove a previously approved requisition for payment because of evidence of:

    (ii)    uninsured claims filed;

    (iv)    reasonable evidence that the Work cannot be completed or the unpaid balance of the Contract price;

    (v)    damage to the Work or other Sub-Subcontractors work for which Subcontractor is responsible;

    (vi)    reasonable evidence that the Work will not be completed within the required completion time.

(h)    Section 15.2 <u>Failure to Perform</u>

Should the Subcontractor be adjudged bankrupt, or make a general assignment for the benefit of creditors, or should a petition under the Bankruptcy Act or under any other act relating to insolvency be filed by or against the Subcontractor, or should a receiver be appointed on account of its insolvency, or should Subcontractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen or of materials of the proper quality and quantity, or fail in any respect to prosecute the Work with promptness and diligence or fail in the performance of any of the obligations on its part herein contained, the Contractor may, if the Subcontractor fails to cure such default within three (3) days after receipt of written notice from the Contractor, in addition to any other rights provided hereunder or otherwise by law, stop the Work and/or discontinue the employment of the Subcontractor hereunder and cause the work to be performed and completed and deduct the cost thereof from any money due or thereafter to come due to the Subcontractor for the said Work, and enter upon the premises and take possession of all materials, tools and equipment of every kind whatsoever thereon, and employ any other person or persons to finish the Work, and to provide the materials therefore; and in case of discontinuance of the employment of the Subcontractor, it shall not be entitled to receive any further payment under this Contract and, if the expenses incurred by the Contractor in finishing the Work shall exceed the unpaid balance of the amount to be paid under this Contract, the Subcontract shall pay the difference to the Contractor.  Upon the discontinuance of the Subcontractor's employment hereunder, Contractor may engage Subcontractor's Sub-Subcontractors and suppliers to complete the Work.

(i) Section 18.4 <u>Legal Forum</u>

> Any dispute or claim arising out of this Contract, or from a breach of this Contract, and which is not resolved by the terms and provisions of this Contract, shall be submitted to the Supreme Court of New York, County of New York. The Subcontractor agrees to participate in, join, and be bound by any proceeding, be it Judicial, Administrative, Arbitration or other, which directly or indirectly relates to this Contract or Project and for which the Contractor demands, by written notice, that Subcontractor participate. Any claim or action by the Subcontractor must be commenced within two years of the date the cause of action accrued, but in no event later than one year after substantial performance of this Contract. If any claim or dispute arises relating to this Contract, the Subcontractor shall immediately make all of its books and records available to the Contractor for review and audit.

### **FOR A FIRST AFFIRMATIVE DEFENSE**

43. This action may not be maintained by reason that Urban has promptly made payment to the Plaintiff for all sums due to it and the Defendant does not have any obligation under the Bond.

### **FOR A SECOND AFFIRMATIVE DEFENSE**

44. This action may not be maintained by reason that the Plaintiff has failed to give proper notice of its claim and the Defendant does not have any obligation under the Bond.

### **FOR A THIRD AFFIRMATIVE DEFENSE**

45. This action may not be maintained by reason that the Plaintiff has breached and defaulted under the terms of the Contract.

### **FOR A FOURTH AFFIRMATIVE DEFENSE**

46. This action with reference to the Plaintiff's claim that Urban did not provide it with access to the site, may not be maintained by reason that Urban was not obligated to

furnish access to the site to the Plaintiff and the Contract provided that the work was to be performed in congested area.

## FOR A FIFTH AFFIRMATIVE DEFENSE

47.     This action with reference to the Plaintiff's claim for the value of the extra work performed, may not be maintained by reason that the alleged change orders were not authorized in writing, notice of such changes were not given and the Plaintiff did not keep daily time sheets of the labor performed and material furnished.

## FOR A SIXTH AFFIRMATIVE DEFENSE

48.     This action may not be maintained for the reason that the Plaintiff's requisitions for alleged outstanding monies due from Urban were not approved.

## FOR A SEVENTH AFFIRMATIVE DEFENSE

49.     This action may not be maintained by reason of the Plaintiff's failure of performance.

## FOR A EIGHTH AFFIRMATIVE DEFENSE

50.     This action may not be maintained in this Court by reason of the forum selection clause in the Contract.

## FOR A NINTH AFFIRMATIVE DEFENSE

51.     This action may not be maintained by reason that the Plaintiff executed waivers and releases of its claims.

## FOR AN TENTH AFFIRMATIVE DEFENSE

52. The Plaintiff breached and defaulted in performance of the Purchase Order and the Bond, and by reason of the incorporation clause this action may not be maintained in that it failed to perform its work in a good and workmanlike manner, it did not maintain an adequate workforce at the Project and it otherwise failed to substantially perform its scope of work.

53. As a result of such breaches it became necessary for Urban to perform additional work, labor and services to correct and complete the Plaintiff's work, all of which caused Urban to incur substantial additional costs, including damages arising from and relating to the extended duration of Urban's work in the amount of approximately $2,000,000.

54. By reason thereof, this action may not be maintained in that the Plaintiff is indebted to the Defendant's principal, and therefor to Defendant in an amount in excess of the Plaintiff's claim.

**WHEREFORE**, the Defendant prays for judgment dismissing the Plaintiff's complaint and that the Court grant such other relief as is appropriate, together with interest, costs, disbursements and counsel fees, if applicable

Dated: Westchester, New York
      October 9, 2007

McDonough Marcus Cohn Tretter
Heller & Kanca, LLP

By: _____
Frank T. Cara, Esq. (FTC 9677)
Attorney for Defendant
145 Huguenot Street
New Rochelle, New York 10801
(914) 632-4700

TO:   Alan Winkler, Esq. (AW 3217)
      Peckar & Abramson, P.C.
      Attorneys for Plaintiff
      546 Fifth Avenue
      New York, New York 10036
      (212) 382-0909

# AFFIDAVIT OF SERVICE BY MAIL

STATE OF NEW YORK            )

COUNTY OF WESTCHESTER    )ss.:

Wilma Santiago, being duly sworn, deposes and says:

That deponent is not a party to the action, is over 18 years of age and resides in Milford, Connecticut 06460. That on the 9th day of October 2007, deponent served the within **ANSWER,** by First Class Mail, upon:

> Alan Winkler, Esq.
> Peckar & Abramson, P.C.
> Attorneys for Respondent
> 546 Fifth Avenue
> New York, New York 10036

by depositing a true copy of same enclosed in a postpaid properly addresses wrapper in an official depository box under the exclusive care and custody of the United States Post Office Department within the State of New York.

_____
Wilma Santiago

Sworn to before me this
9th day of October 2007

_____
Notary Public

JEFFREY S. PESKE
Notary Public, State of New York
No. 02PE6104075
Qualified in Westchester County
Commission Expires Jan. 12, 20 08